And we'll next hear an argument in Christopher Barclay v. Dejan Boskoski. Good morning, Your Honor. May it please the Court. My name is Jesse Finlayson. I represent the appellant, Christopher R. Barclay, the Chapter 7 trustee. I'm honored to be here today. This is an important issue as it relates to bankruptcy practice in this circuit. And I appreciate the opportunity to address the Court. One of the foundational principles of our federal bankruptcy system is that states are allowed to determine property rights. Consistent with this principle, Section 522 of the Bankruptcy Code allows states to opt out of the federal exemptions and to enact their own exemptions, including any and all limitations. The Supreme Court in Owen acknowledged that nothing in Section 522 of the Bankruptcy Code or elsewhere in the Bankruptcy Code limits a state's rights to put restrictions on its exemptions. That principle was reaffirmed by the Supreme Court within the last eight years in the Law v. Siegel case. Again, when a debtor invokes state exemption rights, the scope of those rights is determined by application of state law. The issue in this case is whether in enacting Section 522F of the Bankruptcy Code, which allows avoidance of judicial liens under certain circumstances, Congress intended to create an exception to this bedrock principle, which would allow a debtor to avoid a vested lien right based on a subsequent change in state law in direct violation of the restrictions placed on that change by the state. We contend that Congress did not have that intention. As this Court explained in Jacobson, the debtor cannot pick and choose which portions of the state's exemption law applies. The federal courts are required to apply the entire exemption law enacted in the state in question on the date the bankruptcy is filed and must apply the entire law, not simply portions of that law. Here, the law in question is California's state exemption law. On January 1, 2021, California dramatically increased the amount of its exemption. But at the same time, California law is clear that that increase does not apply retroactively to liens created prior to the increase. The problem for me, and I had real trouble understanding this in your brief, is that the Owen case says that we consider the exemption to which the debtor would have been entitled but for the judgment lien. And so when we say, well, what is the exemption in this case to which the debtor would have been entitled but for the judgment lien, then we have to look at what he would have been entitled to at the date the petition was filed, which is $600,000. So you had an explanation in your brief about how we are to read the language of 522F in light of Owen without reaching that conclusion, which seems very straightforward in light of what the opinion said. So I didn't really follow that. So maybe you could walk me through how I am to read 522F in light of that language in Owen. I'll do my best, Your Honor. The specific language in Owen is that the determination of whether an exemption is impaired should be determined, the exact language is but for the lien at issue. That's the interpretation of would have been entitled, he says. He says, would have been entitled but for what? Well, but for the lien at issue. That's what he says. That's correct. And the point I tried to make in the brief, Your Honor, was that Justice Scalia then goes on to explain in detail what the concern was. And the concern was based on how courts had interpreted the federal exemptions that were in existence at the time. Those federal exemptions defined the amount of the exemption by reference to the debtor's interest in the property. And so it was a math problem, which, as an attorney, I'm probably getting out over my skis. But the issue was if you define the exemption based on the debtor's interest in the property after counting the lien, it will always cap the debtor's interest at a lesser amount, and it will never be impaired. In other words, if the exemption is limited to the debtor's interest after taking the lien into account, then that interest is never impaired by the lien because the exemption is equal to the debtor's interest, which is capped by the lien. It's sort of a circular math problem. And so the federal courts had said that for purposes of doing the arithmetic calculation as it relates to an exemption, you don't count the lien to reduce the debtor's interest in the property because that would lead to an absurd result where the exemption would never be impaired. Instead, you give the debtor the full benefit of the exemption to which he or she would have been entitled under state law on the petition date. What those courts didn't say, and what Owen doesn't say, is pretend like the lien never existed and completely ignore the principles of state law that tell you how you define the amount of the exemption. And I think even the Ninth Circuit BAP and CONOF and other courts have acknowledged that that language in Owen is somewhat unclear and difficult to apply in practical reality. Fortunately, we have the 1994 amendments, which were decided after Owen, which, in effect, in section, I think it's 522F2B, enacted a specific formula for calculating an exemption, which has very similar language in it. And we would contend that that supports our view that but for the lien doesn't mean pretend the lien never existed. So when the state law tells you you calculate the lien based on the law that was in existence at the time the lien was created, you don't pretend the lien doesn't exist. What you do is that you calculate the exemption based on the application of the entire law, which is what this court in Jacobson instructed. But isn't, in your explanation of the federal, how the federal exemptions work, you calculate the amount of exemption as if the lien doesn't exist? I mean, that's what you have to do in order to determine whether it's impaired or not. It's not that you calculate it as though it never existed. It's that you don't deduct the lien amount from the value of the debtor's interest in the property. You don't cap. Right. You give the debtor's exemption has priority over the lien, which is as if the lien didn't exist. That's how you determine what the debtor's entitled to. And isn't that what we're doing here? It's not numerical, but it's the same issue. It's like how do we determine the amount of the debtor's exemption? Well, we have to determine it as if there is no lien. I'm having trouble just getting around that language as set forth in 522F as interpreted by Owen. Again, I think that the – you actually said it better than I said it in the brief, that the exemption has priority over the lien. So it wouldn't make sense to deduct the lien amount from the value of the exemption. So what I believe Justice Scalia was saying in effect in Owen, what some of the courts that have interpreted the case have said, and I think consistent with Jacobson, is that you don't count the lien against the exemption amount. Because if you count the lien against the exemption amount, if you take the lien into the calculation of the exemption, then you are arbitrarily capping the exemption amount, and you are essentially defeating the purpose of the statute. The bankruptcy court here interpreted, Owen, I think in the way you're suggesting, which is we just – when you get to the exemption part of the calculation, you just pretend there was never a lien at all. And you apply the – you give the debtor the exemption that existed on the petition date, regardless of what state law says should happen. And that's certainly a plausible reading. I mean – I'm sorry. No, I'm just looking at Owen, and Justice Scalia says the only conceivable fact we are invited to disregard is the existence of the lien. And so, I mean, it seems more than a plausible reading of that. But it's not – it's not – again, our argument is it's not the existence of the lien in the sense of – in the sense of whether – how you would apply state law. Let me take a step back. The way some of the courts, including the Ninth Circuit and Conoff, have reconciled the language in Owen is to – with the clear rule that states have the right to define and limit exemptions. So you have these two somewhat competing concepts. And there's sort of two ways you can come out on this. One is 522F overrides state law and was intended to – it conflicts with state law, and if it does, obviously, it takes precedent. And contrary to everything else in the Bankruptcy Code and all of the other rules, in this one code section there is this loophole that allows a debtor to disregard clear application of state law and claim an exemption to which he or she is not entitled under state law for purposes of avoiding a lien. That's one interpretation. What the Ninth Circuit and Conoff said was the way you understand that language in Owen is that Owen was a direct conflict case. The issue in Owen was that if you applied state law in the way that the party was arguing there, it would completely strip the debtor's right to claim an exemption or to avoid a lien. Basically, state law said that preexisting liens are not subject to the Homestead Exemption at all. And that was both the Ninth Circuit and the district court case we cited in our paper say that's a direct conflict with the Bankruptcy Code. So you have an argument that federal law supersedes. What the Ninth Circuit has said is that but for when there's a direct conflict, the Ninth Circuit Bankruptcy Appeal Panel, excuse me, when there's not a direct conflict that you should interpret the federal statute and the state law in a way that is consistent. And all we're saying here is that you would determine the amount of the exemption based on the application of state law, the amount of the exemption, not the existence of the exemption. We're not saying that state law prohibits the debtor from seeking to avoid the lien. There is no direct conflict. We're simply saying that when you get to the prong of the analysis, where you need to determine the appropriate exemption amount consistent with all of the overriding principles, that you would apply the entirety of state law. And state law obviously includes the increased exemption amount and just as obviously includes the restriction on that, that it doesn't apply to preexisting liens. And to my knowledge, I don't think, I don't believe any court in this circuit has held and certainly Jacobson didn't hold that there is in this sort of, and, you know, I'm a bankruptcy attorney, so I'm familiar with these statutes, but this is, if we're being honest, an obscure section of the bankruptcy code. That contrary to the entire federal scheme where states are allowed to define and limit exemption rights, that in 522F, without saying so expressly, with reference to saying but for the lien or, you know, what Congress meant was not don't count the lien when you're figuring out the exemption amount in the math equation. What Congress really meant is pretend the lien never existed, and even where state law expressly says here's how you calculate the amount of the exemption, we want you to ignore that and apply the exemption that exists on the petition date. I would suggest that if Congress intended that kind of a drastic departure from the general rules, they would have said so more clearly. It's certainly possible to read Owen that way, but we have the benefit of the 1994 amendments, which took the language Owen was talking about and put it into a math formula. So it's not, I'm not arguing that it's a math issue because by reference to the federal cases at the time, you can sort of define Justice Scalia's intentions. The Congress subsequent to Owen enacted a substantive revision to 522, which included a math formula, which I think makes the point that I'm trying to make, and there's extensive legislative history to that amendment, none of which suggests that they were trying to override state law, that they were trying to ensure that a debtor could claim an exemption in an amount greater than expressly provided by state law. There's nothing in the legislative history to suggest that that's what Congress meant in 1994 when they enacted the amendments to 522. Instead, it seems relatively clear that Congress interpreted the language in Owen in the manner that I'm suggesting, which is it's an issue of where in the calculation do you count the lien amount, not do you pretend the lien doesn't exist at all. So I'd like to reserve what little time I have left. That's fine. Thank you. May it please the Court, Aaron Tiller on behalf of the appellee Dajon Boskowski, the debtor in this case and the homeowner. Your Honor, as I asked, did I be able to reserve two minutes for rebuttal? There's no rebuttal when you're the appellee. Well, I just learned that, so I will ask for no time in rebuttal. Your Honor, this case is not that complex. I think it really boils down to a plain language of the statute. If you read 522F, which was amended in 1994 after the ruling in Owen v. Owen by the Supreme Court, it's extremely clear that the analysis that was made by the bankruptcy court was sound and it was what was supposed to be. The interpretation is to look at what the exemption the debtor was entitled to, but for the lien itself. That's what Scalia's opinion in Owen v. Owen stated in 1991. And in speaking to legislative intent in 1994, Congress went out of their way to amend the statute and even clarify that. And opposing counsel, the appellant's counsel in this case, made comments that this was about arithmetic. But the arithmetic is in 522F, 2A, and then there's three smaller Roman numerals talking about the lien, the other liens on the property, the amount of the exemption that the debtor could claim if there were no liens on the property. Congress, three years later after Owen v. Owens, went out of their way to, in very plain language, could claim if there were no liens on the property. They didn't say tax liens. They didn't say voluntary liens. They said no liens on the property. And the plain language of the statute is that if there were no liens on the property, what would be the exemption that he would be entitled to under California law? And opposing counsel points out that the thrust of 1522 and the thrust of 522 and the thrust of Owen is on which lien has priority. If you think of exemption as the debtor's lien, it's where it falls in priority and how you determine whether it's impaired based on how much value in the property is left over after you take into account all of these interests. Clearly, nobody was thinking about which state law determining the amount of the lien was going to be applicable. That is not suggested by Owen. It's not suggested in the statute. Even if the language can be used to refer to that, why would we expand that meaning to apply in a case like this one? I would respectfully disagree that Owen v. Owen did not state that because the facts of Owen v. Owen are almost identical. The only difference between Owen v. Owen in this case is that under Florida law and the law that stated that preexisting liens did not apply to previously attached property, that law was later amended, but it applied to the date of the exemption. The only difference is in Florida in that case, the debtor in that case was entitled to a zero exemption based upon that Florida statute. Here, he's entitled to a lesser exemption. That is the only difference between the two cases. In the Owen case, the preexisting lien under state law had priority over the homestead exemption. That's the effect of the law. What happened was in 1975, his ex-spouse in Owen, that was Owen v. Owen, was able to get a judgment lien, well, a judgment. Then he acquired a condominium, I believe, in 1984, which under Florida law, after acquired property, so the judgment lien was recorded, he acquired it after, it stated that you were not entitled to the homestead exemption to address after acquired property. However, looking at the snapshot rule, but for the lien itself, later on when he filed after the statute, after the after acquired statute, when they looked at the snapshot rule, which is the date of the filing, just as we should do here, the date of the filing was post the amendment of the law to increase the homestead to $600,000. Just like they did in Owen, they stated, and Scalia went on to state, but for the lien itself, would he be entitled to the amendment to the Constitution in Florida to allow him for this homestead, and they overturned the lower court and stated yes, he would be. Here, the only difference is, under Florida law, he would not be entitled to claim the homestead when the lien attached. Here, he'd be entitled to a lesser homestead. That is the only factual difference between those two cases. The part that's more... Isn't that a significant difference, though? In one case, the question is whether the lien has priority or not, and the court said, well, it doesn't have priority. The homestead exemption still has to be calculated first, where in this case it's, well, no, how much is the amount of the homestead exemption? It doesn't affect the lien. Your Honor, that was one part of the decision, but in Scalia's majority opinion, it stated that it went on to two parts. He was talking about federal exemptions and how interest in property and whether it enters the estate, but there was a section in there, and it's very clear if you... Well, it's not clear, truth be told, and that's why opposing counsel... Some of these interpretations, but in essence, it was the only difference is that after acquired property on the date of filing could declare a homestead, but because it was a property acquired after the lien, they had to look at the hypothetical scenario, and if you read Scalia's opinion, he talks about the hypothetical. If there was no lien, then it wouldn't be an after-acquired property to said lien. Therefore, on the date of filing, he would be entitled to the current homestead that the Florida Constitution entitled him on the date of filing. Here, it is the state restriction, which is if it was in 522, if 522F did not state but for the lien itself, the Supreme Court ruling, and then in 1994, Congress would have gone out of their way to actually add the line, much more clearly stating the amount of the exemption if there were no liens, and they went out of their way, and then as to the arithmetic argument, why would they then put a semicolon? This is important, and I believe the court should look at 522A2A. And in 522, I'm sorry, 522F2A, on that subsection three, they say the amount of the exemption that the debtor could claim if there were no liens on the property. That addresses our argument. That addresses Scalia's argument. That basically, in my opinion, Congress shows their legislative intent to reinforce and clarify Scalia's opinion in Owen v. Owen. Then, as to their argument, they add the arithmetic portion. Semicolon exceeds the value that the debtor's interest in the property would have in the absence of any liens. So they address the arithmetic for impairment, and then they also clarify the ruling in Owen v. Owen by making it very plain. And all Article III courts must follow the plain language of the statute unless it results in an absurd result. This is not an absurd result, because you must look at the policy reasons behind the Bankruptcy Code. In the Bankruptcy Code, one of the tenets of bankruptcy is an equal treatment of creditors. And this creditor in this general unsecured class, who got a judgment in 2012, recorded an absent in 2014, sat on their rights, did not, prior to the increase in the homestead, foreclose on the property, exercise their judicial lien rights. And therefore, they should be treated just like every other creditor, a creditor who recorded a judgment lien after 2021, or a creditor who hadn't recorded an abstract. And that's what the Code requires. It's part of the core tenet of the Code is an equal treatment of creditors. And so it's not absurd. It actually coincides with the Bankruptcy Court's policies. Congress, in 1994, went out of their way to add that line, could claim if there were no liens on the property, rather than the more ambiguous would, could claim, that then was interpreted but for the lien itself. I also would just like to point out that this is not as complicated. I think Appellant's Counsel has artfully made this much more complicated than it is, which is why, since the 1994 amendments, where Congress went out of their way to add the line, the amount of the exemption that the debtor could claim if there were no liens on the property, there are no more cases. There are no cases to address that go in their favor. The only case was a lower Central District Bankruptcy Court, Henry Morgan. After that, the Ninth Circuit BAP and multiple other circuits have ruled in favor of the appellee in this case, stating that you must look at the amount of the exemption that they would be entitled to without the judgment lien on the date of filing. If there are, I would rest as to that, unless there are other questions. Apparently not. Thank you. Thank you, Your Honor. We have a few seconds left for rebuttal. Thank you. Your Honor, I think you had that exactly right, that when Justice Scalia was drafting the Owen opinion and when Congress was enacting the 1994 amendments, they were focused on the priority of the homestead exemption relative to the liens, and that, to paraphrase your question, nobody was thinking about this type of an outcome. What the respondent is arguing here is that, despite that, that you should find that 522F preempts state law and directly overrides the restrictions put on California's homestead exemption by the legislature. I think that would be inappropriate. If it is unclear, as counsel admitted, if Congress didn't really intend this, it wasn't in their mind, the law is that this court should make every effort to reconcile federal law and state law. They should only find preemption where it's clearly and expressly stated, and I don't think that standard is met here. Okay. I thank both sides for their arguments. The case of Barclay v. Voskosky is submitted. Thank you very much, Your Honor.
judges: IKUTA, FORREST, THOMAS